# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

RAMON AVILA GONZALEZ,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security[1]

Defendant.

_____/

Case No.  1:25-cv-00840-SKO

**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

(Doc. 1)

## I.   INTRODUCTION

Plaintiff Ramon Avila Gonzalez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.   BACKGROUND

---

[1] On May 7, 2025, Frank Bisignano was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 9).

Plaintiff was born in 1997.  (Administrative Record ("AR") 614).  He earned a high school diploma.  (AR 87–88).  Plaintiff filed an application for DIB and SSI, alleging he became disabled on June 4, 2017, after an auto accident that resulted in burns over the majority of his body.  (AR 570).

**A.      Relevant Evidence of Record[3]**

      1.      Medical Evidence

Treatment records establish Plaintiff was obese, (AR 2493); had back, (AR 1945, 2533, 2551, 2644–45, 2744, 2761, 2767), neck, (AR 1945, 2047, 2556, 2572–73, 2592, 2596, 2697, 2701, 2747, 3134, 3175, 3177, 3181, 3342, 3366), and foot pain, (AR 1575, 1647, 1654, 1679, 1724–26, 1936, 1938–39, 2085, 2103, 2129–34, 2538, 2546–47, 2615, 2691, 2922, 3245, 3251, 3277); as well as neurological, (AR 1558, 1786, 1944, 1949, 1951, 1956–58, 1972–73, 2566, 2662, 3256), and psychological impairments, (AR 1589, 1592–97, 2088, 2495–97, 2505–07, 2584, 2587, 2659–60, 2710, 2778, 2784–85, 3222–23, 3231, 3254, 3260, 3277).

Additionally, imaging studies of Plaintiff's feet and back yielded results such as "extensive soft tissue swelling" with "staple-like foreign bodies seen in the soft tissue" as to Plaintiff's feet, (AR 2148; *see also* AR 2418–19, 2616), and "mild to moderate bilateral neuroforaminal narrowing," (AR 2644), "[g]rade 1 L5-SI spondylolisthesis," (AR 2645, *see also* AR 2551, 2761), "[m]ild degenerative osteophytes of thoracic spine," (AR 2646, 2761), "[m]inimum to mild bilateral uncovertebral hypertrophy with minimal to mild bilateral neuroforaminal narrowing at C3-C4," (AR 2647), "retrolisthesis of L5 on S1," (AR 2551), as to Plaintiff's back.

      2.      Medical Opinions

The record reflects that numerous medical professionals evaluated Plaintiff, either directly or through his medical records, and based on those evaluations, formed medical opinions.

Dr. Anna M. Franco, Psy.D, evaluated Plaintiff's psychological records on behalf of the agency on initial review of Plaintiff's claim, and completed a medical evaluation on October 1, 2018. (*See* AR 127–28, 143–45, 160–62).   Dr. R. Friedman, M.D. also reviewed Plaintiff's medical

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

records during that initial review, made several findings, and performed a "Physical Functional Capacity Assessment," on December 12, 2018. (*See* AR 124–26, 129–31, 133, 141–43, 146–48, 150, 158–160, 163–65, 167).

Upon request for reconsideration, Dr. Julie Jennings, PhD, evaluated Plaintiff's psychiatric records on behalf of the agency, and completed a medical evaluation on April 8, 2019. (*See* AR 184–85, 207–08, 230–31). Dr. Leslie E. Arnold, M.D. also reviewed Plaintiff's medical records during that reconsideration review, made several findings, and performed a "Physical Functional Capacity Assessment" on April 7, 2019. (*See* AR 180–84, 87–90, 191–93, 203–07, 210–13, 216, 226–30, 233–36, 238–39).

During the course of the agency's reconsideration, two consultative examiners, Dr. Patricia Spivey, Psy.D., and Dr. Satish K. Sharma, M.D., examined Plaintiff in September 2018 and produced reports reflecting the results of their examination and their medical opinions as to Plaintiff. (*See* AR 1934–37 (reflecting Dr. Spivey's "Mental Status Disability Report"); 1943–46 (reflecting Dr. Sharma's "Health Analysis: Internal Medicine Evaluation" report).

Finally, Plaintiff's primary care provider, Nurse Practitioner Stephanie Castillo, who treated Plaintiff over the course of several years, (*see*, *e.g.*, AR 1561, 1567, 2085, 2088–8937, 3251–60, 3260, 3277, 3288), produced a medical source statement on May 30, 2023, in which she opined on Plaintiff's limitations based on his psychiatric condition, (*see* AR 3080–81).

**B.   Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on December 12, 2018, and again on reconsideration on April 7, 2019. (AR 117–242). Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 303–17). The ALJ conducted a hearing on August 23, 2023. (AR 19–46). Plaintiff appeared at the hearing with his attorney and testified as to his alleged disabling conditions and work history. (AR 55–71).

A Vocational Expert ("VE") also testified at the hearing. (AR 65–75). The VE testified that an individual with a high school education and no relevant work experience with a hypothetical residual functional capacity ("RFC") matching the RFC ultimately assessed by the ALJ would be able to be a price marker or routing clerk. (AR 67–68).

**C.      The ALJ's Decision**

In a decision dated October 24, 2023, the ALJ found that Plaintiff was not disabled. (AR 22–38). The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 23–37). The ALJ decided that Plaintiff had not engaged in substantial gainful activity since November 15, 2015. (AR 26). At step two, the ALJ found Plaintiff's following impairments to be severe: burns to bilateral feet status-post grafting and surgical release of bilateral toe contractures, lumbar degenerative disc disease, and obesity. (*Id.*). The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 26–29).

The ALJ assessed Plaintiff's RFC[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand or walk about six hours and sit about six hours. He can never climb ladders, ropes or scaffolds, but he can occasionally climb stairs or ramps. The claimant can frequently balance, kneel, crouch, and crawl and occasionally stoop. He will be required to avoid all exposure to hazards such as unprotected heights and machinery with unguarded moving mechanical parts. The claimant can perform simple tasks that involve occasional interaction with the general public, co-workers, and supervisors and can adapt to occasional workplace changes.

(AR 29; *see also id.* 29–36). Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," the ALJ rejected Plaintiff's subjective

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

testimony as to "the intensity, persistence and limiting effects of these symptoms" as being "not entirely consistent with the medical evidence and other evidence in the record."  (AR 30).

The ALJ then determined Plaintiff had no relevant work (step four) but that, given his RFC, he could perform a significant number of jobs in the national economy (step five).  (AR 36–37).  In making this determination, the ALJ relied on the VE's answers to a series of hypothetical questions the ALJ posed to the VE during the hearing.  (AR 37).  The VE testified that a person with the RFC specified above could perform the jobs of price marker or routing clerk.  (AR 67–68).  The ALJ ultimately concluded Plaintiff was not disabled at any time after June 4, 2017, the alleged onset date.  (AR 37).

Plaintiff sought review of this decision before the Appeals Council, which denied review on February 12, 2024.  (AR 6–8).  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe

impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff asserts three claims of error: (1) the ALJ's RFC is not based on substantial evidence, (2) the ALJ failed to give legally adequate reasons for discounting the medical opinions of Dr. Sharma and Nurse Practitioner Castillo, and (3) the ALJ failed to give legally adequate reasons for discounting Plaintiff's reported subjective symptoms. (*See* Doc. 16 at 23–45). The Commissioner counters that the ALJ properly assessed the RFC and the medical opinions of record, and reasonably discounted Plaintiff's symptom allegations. (Doc. 18 at 3–13). The Court agrees that the RFC is not supported by substantial evidence in light of the ALJ's formulation of an RFC based on ambiguous evidence without relying on any credited medical opinion in the record.[5]

---

[5] Because further proceedings will necessitate the re-evaluation of the record and the medical opinions provided, *see infra*, the Court does not reach the issue of the ALJ's treatment Dr. Sharma and Nurse Practitioner Castillo's medical opinions or Plaintiff's subjective symptom complaints—which were discounted in part because they were inconsistent with and/or unsupported by that undeveloped record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

7

**A.      Analysis**

Plaintiff claims that the ALJ erred in formulating an RFC after rejecting each of the medical opinions in the record as unpersuasive.  (Doc. 18 at 36–37).  In defense of the ALJ's decision as to this assertion of error, the Commissioner contends that because ALJs, who are not medical professionals, are responsible for determining a claimant's RFC, the ALJ's conclusion must be upheld.  (Doc. 18 at 7–8).

An RFC is the most a claimant can do despite their limitations and is based upon all relevant evidence in the record, including medical records, medical source statements, and symptom testimony.  20 C.F.R. § 404.1545(a)(1)–(3); *Shafer v. Barnhart*, 120 F. Appx. 688, 698 (9th Cir. 2005).  As the Commissioner contends, it is true that a determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* (Doc. 13 at 2); 20 C.F.R. §§ 414.927(d)(2) (RFC is not a medical opinion), 414.946(c) (identifying the ALJ as responsible for determining RFC).  And that legal determination necessarily involves engaging in credibility determinations, resolving conflicts in medical testimony, and resolving evidentiary ambiguities, *see Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)— such that an ALJ's RFC determination need not mirror any particular provider's opinion, *see*, *e.g.*, *Petrini v. Berryhill*, 705 F. App'x. 511, 512 (9th Cir. 2017).

In light of this legal framework, the Court is mindful that the ALJ, not this Court, is responsible for resolving conflicts in the evidence.  However, the Court also takes note of the fact that ALJs are obliged to exercise caution in formulating an RFC that leads to a finding of non-disability in cases where "no doctor or other medical expert opined, on the basis of a full review of all relevant records," that Plaintiff could perform work during the relevant time period. *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) (holding that ALJ should have exercised caution because "no doctor or other medical expert . . . opined, on the basis of a full review of all relevant records, that [Plaintiff] is capable of working or is prepared to return to work'").  For the following reasons, the Court finds that such caution was warranted here.

Here, the ALJ considered and evaluated several medical opinions regarding the effects of Plaintiff's impairments, specifically from State Agency medical consultants, Drs. Franco, (AR

127–28, 143–45, 160–62), and Friedman, (AR 124–26, 129–31, 133, 141–43, 146–48, 150, 158–160, 163–65, 167), on initial review, and Drs. Jennings, (*see* AR 184–85, 207–08, 230–31), and Arnold, (*see* AR 180–84, 87–90, 191–93, 203–07, 210–13, 216, 226–30, 233–36, 238–39), on reconsideration—two consultative examiners—Drs. Spivey, (*see* AR 1934–37), and Sharma, (*see* AR 1943–46)—and Plaintiff's primary care provider, Nurse Practitioner Castillo, (*see* AR 3080–81). *See also* 20 C.F.R. § 404.1527(a)(2), 416.927(a)(2) (defining medical opinions as statements that "reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions."). The ALJ found each of these medical opinions "unpersuasive," finding that (1) agency medical consultants Drs. Franco and Jennings' opinions "were not consistent with the medical record;" (2) consultative examiner Dr. Spivey's opinion was "not consistent with the medical record;" (3) primary care provider Nurse Practitioner Castillo's opinion "was essentially a checkbox form" that "endorsed the most significant limits in many areas without citation to the objective evidence and without support in the treatment notes," "was not consistent with the medical record," and impermissibly opined on an issue "reserved to the Commissioner"; (4) agency medical consultants Drs. Friedman and Arnold's opinions "were not consistent with the medical record": and (5) consultative examiner Dr. Sharma's opinion "was not consistent with the medical record." (AR 34–36). In other words, the ALJ found each and every medical opinion in the record concerning Plaintiff's impairments not credible or otherwise impermissible. While the absence of a medical opinion is not necessarily fatal, the RFC determination still must be supported by substantial evidence. *See Bradford v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00232-TUC-SHR (JR), 2022 WL 4538569, at *5 (D. Ariz. Aug. 18, 2022).

Turning to whether the ALJ's assessed RFC is supported by substantial evidence, the Court observes that it is well-settled that an ALJ may not render their own medical opinion and is not empowered to independently assess clinical findings "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *see also Tackett*, 180 F.3d at 1102–03 (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Miller v. Astrue*, 695 F.

Supp. 2d 1042, 1048 (C.D. Cal. 2010) (reasoning that it is improper for the ALJ to act as the medical expert); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An 'ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . and he 'must not succumb to the temptation to play doctor and make his own independent medical findings'" (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)).

Applying this rule to the present case, the Court finds that the ALJ did not simply synthesize the medical evidence and opinions to reach an RFC determination.  Instead, without relying on any medical opinion regarding what work-related restrictions would be appropriate, the ALJ based the RFC determination on its own interpretation of Plaintiff's testimony and the medical evidence— formulating limitations to the RFC out of whole cloth and concluding that those limitations were sufficient to address Plaintiff's impairments.

For example, while the treatment records establish Plaintiff was obese, (AR 2493), and had back, (AR 1945, 2533, 2551, 2644–45, 2744, 2761, 2767), neck, (AR 1945, 2047, 2556, 2572–73, 2592, 2596, 2697, 2701, 2747, 3134, 3175, 3177, 3181, 3342, 3366), and foot pain, (AR 1575, 1647, 1654, 1679, 1724–26, 1936, 1938–39, 2085, 2103, 2129–34, 2538, 2546–47, 2615, 2691, 2922, 3245, 3251, 3277); in addition to neurological, (AR 1558, 1786, 1944, 1949, 1951, 1956–58, 1972– 73, 2566, 2662, 3256), and psychological impairments, (AR 1589, 1592–97, 2088, 2495–97, 2505– 07, 2584, 2587, 2659–60, 2710, 2778, 2784–85, 3222–23, 3231, 3254, 3260, 3277); excluding the discounted medical opinions, the records do not indicate the functional limitations caused by such pain and impairments.  *See Hurt v. Kijakazi*, No. 3:20-CV-00481-CSD, 2022 WL 444355, at *9–10 (D. Nev. Feb. 14, 2022) ("When the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities . . . [the] bare medical findings are unintelligible to a lay person in terms of residual functional capacity.'") (quoting *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 293 (1st Cir. 1986))). Moreover, while the imaging studies of Plaintiff's feet and back yielded results such as "extensive soft tissue swelling" with "staple-like foreign bodies seen in the soft tissue," (AR 2148; *see also* AR 2418–19, 2616), as to Plaintiff's feet,  and "mild to moderate bilateral neuroforaminal narrowing," (AR 2644), "[g]rade 1 L5-SI spondylolisthesis," (AR 2645, *see also* AR 2551, 2761), "[m]ild

degenerative osteophytes of thoracic spine," (AR 2646, 2761), "[m]inimum to mild bilateral uncovertebral hypertrophy with minimal to mild bilateral neuroforaminal narrowing at C3-C4," (AR 2647), and "retrolisthesis of L5 on S1," (AR 2551), as to Plaintiff's back—it is not clear *what* functional limitations result from those clinical findings. *See Howell v. Kijakazi*, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (MRIs, radiological studies, and X-rays "generally reflect only the findings, impressions, and medical diagnoses, which are difficult for a lay person to interpret.").

Therefore, the Court finds that the underlying treatment and imaging records are the kinds of "raw," *Shipp v. Colvin*, No. CV 13-9468 JC, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014), and "ambiguous" evidence that themselves do not provide sufficient indications of Plaintiff's physical functional limitations and thus, the ALJ was not qualified to the translate evidence into functional limitations and engage in its "own exploration and assessment" of a Plaintiff's impairments taken together. *McAnally v. Berryhill*, Case No.: 3:18-cv-02272-GPC-RNB, 2020 WL 1443734, at *7 (S.D. Cal. Mar. 25, 2020) (quoting *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). It then follows that, under these circumstances, the ALJ had a duty to develop the record further, *see Ford*, 950 F.3d at 1156. *See Warren v. Comm'r of Soc. Sec.*, No. 1:24-CV-00751-SAB, 2025 WL 2473120, at *10 (E.D. Cal. Aug. 28, 2025) (finding the ALJ erred in formulating an RFC where the record was void of a "medical finding that 'mild spondylosis at C3-4 and C4-5' and '[s]mall anterior endplate osteophytes noted at C4 and C5,' in consideration of Plaintiff's other assessed physical limitations, translates to modified light work."); *Heskett v. Bisignano*, No. 1:25-CV-00274-SKO, 2025 WL 1993698, at *6 (E.D. Cal. July 17, 2025) (noting that although imaging studies yielded predominately mild findings, "it is not clear what functional limitations result from those clinical findings" and thus the imaging records are the kinds of raw and ambiguous evidence that itself does not provide sufficient indications of Plaintiff's physical functional limitations).

Indeed, Ninth Circuit courts have found that "[b]arring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decisions." *Bradford*, 2022 WL 4538569, at *5 (quoting *Howell*, 2022 WL 2759090, at *7); *Walker v. Comm'r of Soc. Sec.*, Case No. 2:22-cv-01871-EJY, 2024 WL 64784, at *6 (D.

Nev. Jan. 4, 2024) ("While the ALJ 'can pick and choose between opinions expressed by the experts,' when an ALJ decides severity or residual functional capacity 'without the support of any of the medical opinion evidence,' this is error." (quoting *Holtan v. Kijakazi*, 2:22-cv-01222-VCF, 2023 WL 2424648, at *3 (D. Nev. Mar. 9, 2023))).  Or, put another way, without a persuasive medical opinion to support the conclusion that Plaintiff can

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand or walk about six hours and sit about six hours. He can never climb ladders, ropes or scaffolds, but he can occasionally climb stairs or ramps. The claimant can frequently balance, kneel, crouch, and crawl and occasionally stoop. He will be required to avoid all exposure to hazards such as unprotected heights and machinery with unguarded moving mechanical parts. The claimant can perform simple tasks that involve occasional interaction with the general public, co-workers, and supervisors and can adapt to occasional workplace changes,

the ALJ's RFC lacks the support of substantial evidence.  *See Holtan,* 2023 WL 2424648, at *3 (finding that the ALJ erred primarily by simply summarizing the medical evidence without making it clear how the ALJ then translated that evidence into an RFC, noting that it was "particularly concerning because the ALJ did not rely on any of the medical opinions, <u>finding all of the medical opinions of record unpersuasive</u>."); *De Gutierrez v. Saul*, No. 1:19-cv-00463-BAM, 2020 WL 5701019, at *6 (E.D. Cal. Sept. 24, 2020) ("Without a medical opinion to support the conclusion that Plaintiff was able to perform" a certain level of work, lift and carry certain weight, or sit, stand or walk for certain periods of time, "the ALJ's RFC lacks the support of substantial evidence.") (citing *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) ("where an ALJ reaches conclusions about claimant's . . . capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence")); *Goolsby v. Berryhill*, Case No. 1:15–cv–00615–JLT, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017) (finding that an ALJ erred in including "simple routine tasks" in RFC when the record did not contain medical opinions supporting this limitation); *Shipp*, 2014 WL 4829035, at *7 ("Since . . . the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record.").  Accordingly, the Court finds that the

ALJ erred in evaluating Plaintiff's RFC.

**B.    Harmlessness Review**

The Court must now consider whether the ALJ's error was harmless.  *Molina*, 674 F.3d at 1115.  Courts look to the record as a whole to determine whether the error alters the outcome of the case.  *Id*.; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).  An error is harmless "where it is inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d at 1115 (citations omitted) (first quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and then quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

This Court finds this was harmful error necessitating remand.  *Tommasetti*, 533 F.3d at 1038 (ALJ error is harmless if it is "inconsequential to the ultimate nondisability determination.").  While the ALJ assigned physical limitations restricting Plaintiff to light work with additional limitations, the RFC is still without supporting evidence.  Had the ALJ included different limitations in the RFC based upon a proper review of the evidence and an adequate record, the ultimate disability determination may have been different.[6]  *See Clarenda A. S. v. O'Malley*, No. 1:24-CV-00127-DKG, 2024 WL 4851214, at *5 (D. Idaho Nov. 21, 2024) (finding harmful error where the ALJ relied on her own interpretation of the medical records without any medical opinion of Plaintiff's physical functioning in formulating the RFC).  In particular, because the record "[did] not support the assumptions in the hypothetical[s]" posed to the VE, the hypotheticals were incomplete and therefore, the "vocational expert's opinion [had] no evidentiary value." *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001).

**C.    Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits.  Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled.  *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

---

[6] This is not to say that the disability determination will or should be different regarding the period at issue--only that the Court cannot determine the outcome would remain the same upon a correct evaluation of the record.

13

Here, the Court finds that remand for further proceedings is warranted. *See*, *e.g.*, *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further findings evaluating the credibility of [the claimant's] subjective complaints"). On remand, the Commissioner shall further develop the record, as outlined above, to allow for proper consideration of the medical evidence related to the time period at issue.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Ramon Avila Gonzalez and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  __February 17, 2026__          ___/s/ *Sheila K. Oberto*___
                                              UNITED STATES MAGISTRATE JUDGE